(No. 7147. May 5, 1944.)

MICHAEL S. ALPERT, Respondent, v. CHAS. E. GREENLEE, Doing business as Greenlee Dependable Plumbing Service, Appellant, and PRENTISS M. BROWN, Intervenor.

[148 Pac. (2d) 777.]

548

Elam & Burke for appellant.

Harry S. Kessler for respondent.

James H. Hawley, D. W. Thomas and Wm. F. Galloway for intervenor.

AILSHIE, J.—The nature and character of this action is very clearly and succinctly stated by the trial court in his instructions to the jury, in part as follows:

"Plaintiff brings this action against the above named defendant to recover a statutory penalty and attorney's fees provided in an Act of Congress entitled 'Emergency Price Control Act of 1942', approved January 30, 1942.

. . . . plaintiff alleges that the defendant now is and on the date hereinafter mentioned was engaged in the plumbing business at Boise, Idaho, under the name and style of Greenlee Dependable Plumbing Service;

"That on the 14th day of January, 1943, at Boise, Idaho, the plaintiff purchased from defendant, and defendant sold to plaintiff, certain commodities of defendant's business, to-wit: plumbing service in moving and reconnecting a water tank in connection with a sanitary plumbing system, and certain pipe and plumbing connections, and charged plaintiff therefor a price greatly in excess of the maximum prices as provided by Public Law 421-77th Congress (Chapter 26-2D Session) (H. R. 5990) known as the 'National Price Control Act', and of the regulations, orders, and price schedules fixed by and provided for and made under the provisions of said act;

"That said plumbing was done or performed within the city of Boise, Ada County, Idaho, and defendant caused said plumbing work to be done and performed by a person who was not a registered plumber as defined by the ordinances of Boise City, and the said defendant in violation of the aforesaid Federal Statute and the rules and regulations thereunder charged plaintiff for such plumbing services a price clearly in excess of the maximum price fixed by and prescribed in the aforesaid Federal Statute and the rules and regulations thereunder, and charged plaintiff therefor, for the services of an unregistered, unlicensed plumber, a price equal to the price allowed or permitted to be charged only by a registered plumber, particularly as follows: that the maximum price then permitted to be charged for a legally qualified, licensed and registered plumber was $2.00 per hour, and for a person not so legally qualified, licensed and registered, the maximum chargeable price was $1.00 per hour; and that the defendant in violation of said statute and of the rules and regulations thereunder, charged plaintiff $2.00 per hour for the time of a worker not a legally qualified, licensed or registered plumber."

The jury returned a verdict in favor of the plaintiff, assessing damages against the defendant for $50.00 penalty and $50.00 attorney's fees. Defendant thereupon prosecuted this appeal and assigns a number of errors, which reduce themselves to two questions:

(1) The rulings of the court in rejecting certain testimony offered by defendant; and

(2) Refusing to give defendant's requested instruction No. 1, and in giving that part of instruction No. 7, to the effect, that the "question involved. . . is, whether or not defendant in this case charged the plaintiff for services rendered in January, 1943, a price in excess of the highest price charged by the defendant for the same or similar employees during the month of March, 1942."

It is contended by respondent, who was plaintiff below, that defendant violated sec. 1397.55, price regulation order of October 30, 1942, OPA-1018, promulgated under the authority of the Emergency Price Control Act of 1942; Title 50, sec. 925, U. S. C. A., p. 343.

The real contention made in the case was, and is, that the defendant (appellant) charged the plaintiff in January, 1943, a price for services of a plumber greater than "the price which would have been charged for said sale in March, 1942, based on his then prevailing rates for labor and material, and his then prevailing margin." (Emergency Price Regulation 251, October 30, 1942, OPA-1018, sec. 1397.55.)

In the first place, that part of Instruction No. 7, to which objection is made, should have been in the language of the regulation. It was erroneous to instruct the jury that

"The question involved. . . is, whether or not defendant . . . . charged. . . . for services rendered in January, 1943, a price in excess of the highest price charged by the defendant for the same or similar employees during the month of March, 1942."

In other words, the test is not the highest price charged by the defendant but rather "the price which would have been charged for said sale in March, 1942." (Sec. 1397.55, Price Control. Regulation.)

Defendant was a registered, licensed plumber, and it is admitted that his regular charge in March, 1942, for the services of an experienced plumber, was $2.00 per hour. On the other hand, there is no contention that he charged

more than that. The controversy therefore, reduced itself to the issue, as to whether or not the charge made for the service of *employees in January*, 1943, was in excess of "the price which would have been charged in March, 1942," for "like and similar service" by an employee or employees of like and similar qualifications to do the work. The proofs disclosed that appellant had in his employ a plumber named Orville Hardin, who was experienced and qualified to do plumbing but who was not licensed; and that he worked until February 3, 1942, when he quit; that from February 3d to March 23d, appellant had no experienced and qualified plumber except himself; that on the latter date he employed one Shorty Clever, who was an experienced and qualified plumber but who also was unlicensed. Clever worked on several jobs, both independently and as a helper, after the date of his employment (March 23d) and extending through the month of April.

It seems from the testimony and appellant's books,—those admitted and those rejected,—that, when two experienced plumbers went on a job, appellant did not charge for *two plumbers* but rather made the charge for *one plumber* and *one helper*. So, also, it seems that the helper jobs were charged according to the character or difficulty of the job. Although a wholly inexperienced workman might remove and replace a water faucet or uncouple, clean, and replace a drain pipe quite as well as an experienced plumber, *it would no doubt take him a longer time* to do so. In the end, however, the customer would receive as good service from the one as from the other. On the other hand, an inexperienced man would not be competent to do some jobs at all. Appellant claims that he attempted to regulate his charges on such a scale. Whether he succeeded, to the degree required by the Federal regulation in question, was the real issue to be decided.

Now it seems self-evident that the appellant had no means of foretelling that a Federal act would be adopted and the order above quoted would be promulgated nearly a year later, when he made the charges appearing on his books under dates of February and April, 1942. These entries, while not fixing the maximum price allowed as of March, were nevertheless strong circumstantial evidence of what *would have been charged*, in corroboration of appellant's explanation of the charges made in March, 1942, and

subsequent charges in January, 1943, on which he is being prosecuted.

The Emergency Price Control Act of 1942 and regulation orders thereunder were not adopted to hamper or penalize legitimate business but rather to protect the public in time of great national emergency against the avarice and cupidity of uncontrolled human nature.

When a business man is cited into court, with a purpose of penalizing him for a charge he has made for his own services or merchandise, the burden rests upon the complainant to make a clear case of some infraction of the law before he can be penalized for such alleged act.

In determining what a *specific service would have sold for* at a given time, a variety of facts and circumstances is necessarily involved and, in that respect, differs from the *sale of goods, wares and merchandise,* in that the latter is ordinarily marked or listed in advance with the *sale price,* by which "the price which would have been charged for said sale" may readily be determined.

On examination of appellant, he was asked:

"Q. During the time he was with you, how much did you charge per hour for the services of Hardin?"

Objection was sustained to the question, on the ground that Hardin had ceased to work for appellant on the third of February, and the price regulation related to charges made during the month of March. Later on, in the course of appellant's testimony, his counsel offered in evidence Defendant's Exhibit No. 7, being pages 134-148, inclusive, of the journal kept by him, showing charges made during the month of April, 1942. Objection was sustained on the same ground as made to the previous testimony of the witness concerning charges during the month of February. The court, in both instances, held that the only time for which charges made by appellant could be shown was during the month of March alone. The rulings were erroneous.

It appears that in March, 1942, appellant had in his employ a young, inexperienced man named Gordon Ramey and an elderly man named Al Lehman; all that the latter did was to stay in the office and answer telephone calls. Ramey served sometimes as a helper on plumbing jobs. Appellant also had a man named Blackwell who assisted on one job only. None of these employees were experienced plumbers and no charge was made for them as such. Hardin, an ex-

perienced plumber, had left appellant's service February 3d and Shorty Clever took up service from March 23d. His first work was done on a contract job. It appears that all the services rendered by these employees during March were simply as helpers.

Appellant's uncontradicted evidence in part follows:

"Q. . Did you employ any men, or these men that were with you in March, as plumbers or as helpers.

"A. Just as helpers.

"Q. Explain to the jury what you mean by a helper?

"A. Helpers, in other words is inexperienced men that had not had sufficient experience or training to qualify as plumbers. At that time the services of these men were the only services that I could get because qualified plumbers were not to be had.

"Q. Just what work did they do when they were on a job with you?

"A. In other words they sort of waited on me. They would hand me tools, or go out to the truck and get a piece of pipe, cut it according to my measurements. In other words they were just assisting me.

"Q. Even when you had qualified plumbers, did you do some work on the same basis, where one would act as helper to the other?

"A. Yes, sir.

"Q. Under what circumstances now would work of that kind be performed?

"A. If two men went out together; in other words, if I had a call that I wanted to make in person and we had nothing else for the other man to do, I would take him along and he acted simply as my helper. The customer usually is charged for his services at the rate of helpers.

"Q. And that was on what basis so far as Shorty was concerned when he went with you as helper?

"A. A dollar an hour.

"Q. How much, an hour?

"A. In some cases I charged 75 cents an hour on them.

"Q. That is when they were strictly helpers?

"A. Yes, sir.

"Q. You yourself had charges—at times you made charges for yourself on that basis?

"A. I do."

No question arises here as to the quality of the service rendered. It makes no difference, as far as this action is concerned, whether the employee was licensed or unlicensed. No issue is made of that.

The overcharge complained of here is for plumbing services rendered by the employee, Shorty Clever, on January 14, 1943. Clever was 39 years old, had had two years experience as a plumber in Spokane and some nine or ten months experience with appellant. He was admittedly an experienced plumber. He did the job for appellant, which occupied 7½ hours, for which charge was made by appellant for $15.00; Clever did the work alone without a helper. The work he did for appellant in the month of *March, 1942,* was simply as a helper and apparently a charge was only made at helper rates for such services.

Appellant offered to prove that the work done by Hardin in February, '42, was that of an experienced plumber and that, for his time together with the use of the truck and tools, appellant charged the customary $2.00 per hour. This offer was rejected.

Under the circumstances of this case, we think evidence of the charges made for similar service in February and April, 1942, should have been admitted. (See *MacDonald v. Ogan,* 64 Ida. 168, 129 P. (2d) 654, 658.)

Error is assigned upon the refusal of the court to give the jury the following requested instruction:

"You are hereby instructed that statutes imposing penalties such as the one under which this action is brought, are subject to the rule of strict construction, that is, they are not to be construed to include anything which is not within the letter of the statute even though within its spirit."

We find no error in the refusal of the court to give the foregoing instruction, for the reason that if it be conceded that the instruction is a correct statement of the law applicable to the case, nevertheless, it is a rule for the guidance of the court in settling the issues and conducting the trial of the case. It involves a question of law and not of fact. The jury had nothing to do with "construing" the statute; that was the duty of the court.

It may well be observed in passing, that the cases cited by respondent are not cases dealing with *instructions* to

juries but rather on questions of jurisdiction of the courts in which the cases were pending. This is illustrated by the cases of *Beasley v. Gottlieb,* 131 N. J. L. 117, 35 Atl. (2d) 49; and *Pratt v. Hollenbeck,* 46 Pa. Dist. & C. R. 657.

■ Appellant complains of the action of the court in permitting Prentiss M. Brown, Price Administrator, to intervene in the case and bases his objection on the ground, that the complaint in intervention raised no issue, states no cause of action, and makes no demand against either the plaintiff or the defendant, or adverse to both plaintiff and defendant, as required by sec. 5-322, I. C. A. It is unnecessary for us to pass upon the question as to the sufficiency of the showing of the intervenor to entitle him to intervene, for the reason that no relief was granted in favor of intervenor as against this appellant, and he was therefore not prejudiced. It has been held, however, under a somewhat similar statute, that the administrator has legal and undeniable right of intervention in all such actions. (*Brown v. D. E. Concini,* (Ariz.) 140 P. (2d) 224; sec. 205d of the Emergency Price Control Act of 1942, 50 U. S. C. A., sec 925d, p. 342.)

The judgment is reversed and the cause is remanded with instructions to grant a new trial, in accordance with the views herein expressed. Costs awarded to appellant.

Givens, and Dunlap, JJ., concur.

Holden, C. J., dissents.